FILED

JAN 2 8 2014

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ) No. **14 CR 41**
)
vs. ) Violations: Title 15, United States
) Code, Sections 78j(b) and 78ff(a);
) Title 17, Code of Federal
STEVEN M. DOMBROWSKI ) Regulations, Section 240.10b-5

## COUNT 1

JUDGE ELLIS

The SPECIAL AUGUST 2012 GRAND JURY charges:

MAGISTRATE JUDGE COX

1.      At times material to this indictment:

a.      Allscripts Healthcare Solutions, Inc. was a Chicago-based company in the business of providing information technology solutions in the healthcare industry. Allscripts common stock traded on the NASDAQ stock market under the symbol MDRX. Allscripts publicly disclosed information about its expenses, sales, revenues, and earnings periodically, including on a quarterly basis.

b.      Defendant STEVEN M. DOMBROWSKI was employed as Allscripts's Director of Audit. DOMBROWSKI, and the Allscripts employees he supervised, were responsible for auditing and testing the processes and procedures Allscripts used to compute and report its financial performance.

c.      As a result of his employment as Allscripts's Director of Audit, DOMBROWSKI learned material nonpublic information about Allscripts, including information about its quarterly expenses, sales, revenues, and earnings.

d.      As Allscripts's Director of Audit, DOMBROWSKI owed Allscripts duties of trust and confidence to maintain the confidentiality of the material nonpublic information he obtained during his employment there.   These duties prohibited DOMBROWSKI from trading Allscripts securities while in possession of inside information about the company.

e.      Allscripts had a written policy expressly forbidding its employees from trading Allscripts securities if the employees were aware of material nonpublic information relating to the company.   The policy defined material information to include "projections of future earnings or losses or other earnings guidance" and "earnings that are inconsistent with the consensus expectations of the investment community."   The policy defined nonpublic information as "information that is not generally known or available to the public," and stated that "information is considered nonpublic until the second full trading day after the information is released."   The policy specifically prohibited employees from engaging in short sales of Allscripts stock, and from buying its publicly traded options such as put options. The policy further informed Allscripts employees that a violation of the insider trading policy could constitute a criminal offense, and that potential penalties for insider trading included imprisonment and fines.   Allscripts provided each employee with a copy of the policy.

f.      Allscripts's insider trading policy provided for "blackout" periods of time during which employees could not engage in transactions in MDRX

2

securities. A quarterly blackout period generally began fifteen days before the end of a quarter, and ended after the second full business day following the company's quarterly earnings announcement. The purpose of the quarterly blackout period was to ensure that Allscripts employees with access to material nonpublic information did not violate the insider trading policy. A blackout period was in effect at Allscripts from at least April 10, 2012, through April 28, 2012. Allscripts provided written notice of the blackout period to all employees to whom it applied, including DOMBROWSKI.

g. A put option was a security that gave its owner the right to sell a specific number of shares of a particular company within a certain time period at a specific price, known as the strike price. A put option owner typically hoped that the stock price would decline below the strike price of the put option. The owner of an Allscripts put option had the right to sell 100 shares of Allscripts stock if the owner exercised the option. For example, in April 2012, the owner of 50 MDRX May 15 put options had the right to sell 5,000 shares of Allscripts stock for $15.00 per share on or before May 19, 2012. Allscripts put options traded on several national securities exchanges, including the Chicago Board Options Exchange, under the symbol MDRX. All trades involving MDRX put options were cleared and settled by the Options Clearing Corporation, which was located in Chicago, Illinois.

h. DOMBROWSKI controlled a trading account that was held in his wife's maiden name.

2.     Beginning no later than April 9, 2012, and continuing through October 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

STEVEN M. DOMBROWSKI,

defendant herein, directly and indirectly, by the use of a means and instrumentality of interstate commerce, and a facility of a national securities exchange, willfully used and employed, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing a device and scheme to defraud; and (b) engaging in an act, practice, and a course of business which operated and would operate as a fraud and deceit upon any person, which scheme to defraud is further described below.

3.     It was part of the scheme that DOMBROWSKI misappropriated for his own benefit certain material nonpublic information he obtained about Allscripts's quarterly performance as a result of his employment at Allscripts, in breach of the duties of trust and confidence he owed to Allscripts, and in violation of Allscripts's policy regarding insider trading.   DOMBROWSKI, while in possession of this material nonpublic information, purchased and sold Allscripts securities, including the purchase of put options and a short sale of stock, and as a result made illegal profits of approximately $286,211.

4

4.    It was further part of the scheme that in April 2012, before Allscripts publicly announced its quarterly results, DOMBROWSKI learned through his employment as Allscripts's Director of Audit that the company's first quarter 2012 financial performance results were going to be less favorable than market expectations when those results were publicly announced on April 26, 2012.   This information was material and nonpublic.   DOMBROWSKI had a duty to Allscripts not to trade Allscripts securities while in possession of this information.

5.    It was further part of the scheme that, throughout the month of April 2012, DOMBROWSKI, in breach of his duties to Allscripts, conducted securities transactions that he designed to be profitable if the price of Allscripts stock declined. These included the purchase of put options, and the short sale of stock, both of which DOMBROWSKI knew were prohibited by Allscripts.   On April 26, 2012, after the close of the markets, Allscripts's first quarter announcement revealed that the company experienced lower sales, less revenues and lower earnings per share than the first quarter of 2011.   Allscripts's stock price declined.

6.    It was further part of the scheme that, after the price of Allscripts's stock declined on and after April 26, 2012, DOMBROWSKI offset his Allscripts securities positions and made a profit of approximately $286,211.

7.    It was further part of the scheme that DOMBROWSKI misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the true purpose of the acts done in furtherance of the scheme.

5

8.    On or about April 10, 2012, in Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

STEVEN M. DOMBROWSKI,

defendant herein, in connection with the purchase and sale of a security, used and caused the use of a facility of a national securities exchange to short sell 1,000 shares of Allscripts stock;

In violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5.

## COUNTS 2—16

The SPECIAL AUGUST 2012 GRAND JURY further charges:

1.  The allegations in paragraphs 1 though 7 of Count One of this indictment are incorporated here.

2.  On or about the approximate dates below, in Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

STEVEN M. DOMBROWSKI,

defendant herein, in connection with the purchases and sales of securities identified below, used and caused the use of a facility of a national securities exchange,

| Count | Approx. Date | Transaction |
|-------|--------------|-------------|
| 2 | 4-10-2012 | Purchase of 50 MDRX May 15 put options |
| 3 | 4-11-2012 | Purchase of 50 MDRX May 15 put options |
| 4 | 4-12-2012 | Purchase of 100 MDRX May 15 put options |
| 5 | 4-13-2012 | Purchase of 50 MDRX May 15 put options |
| 6 | 4-16-2012 | Purchase of 50 MDRX May 16 put options |
| 7 | 4-17-2012 | Purchase of 50 MDRX May 15 put options |
| 8 | 4-19-2012 | Purchase of 17 MDRX May 16 put options |
| 9 | 4-24-2012 | Purchase of 33 MDRX May 16 put options |
| 10 | 4-25-2012 | Purchase of 50 MDRX May 17 put options |

| 11 | 4-26-2012 | Purchase of 50 MDRX May 15 put options |
| 12 | 4-26-2012 | Purchase of 10 MDRX May 17 put options |
| 13 | 4-26-2012 | Purchase of 1,000 MDRX shares |
| 14 | 4-27-2012 | Sale of 350 MDRX May 15 put options |
| 15 | 4-27-2012 | Sale of 100 MDRX May 16 put options |
| 16 | 4-27-2012 | Sale of 60 MDRX May 17 put options |

In violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5.

8

## **FORFEITURE ALLEGATION**

The SPECIAL AUGUST 2012 GRAND JURY further alleges:

1.      The allegations in Counts 1 – 16 of this indictment are incorporated here for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.      As a result of his violations of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17 Code of Federal Regulations, Section 240.10b-5, as alleged in Counts 1 – 16 of this indictment,

STEVEN M. DOMBROWSKI,

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all right, title, and interest he may have in any property constituting, and derived from, proceeds they obtained directly or indirectly as the result of such violations.

3.      The interests of defendant subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), includes the sum of at least $286,211.

4.      If any of the forfeitable property described above, as a result of any act or omission by defendant:

      (a)      cannot be located upon the exercise of due diligence;

      (b)      has been transferred or sold to, or deposited with, a third party;

9

(c)      has been placed beyond the jurisdiction of the court;

(d)      has been substantially diminished in value; or

(e)      has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c);

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES ATTORNEY